Good morning. Buenos dias. May it please the court. My name is Mario Acosta Jr. and I'm appearing on behalf of the petitioner in this case. With the court's permission, I'd like to reserve two minutes of my time for rebuttal. Your Honor, the question presented in this case is whether, at the time the government executed my client's removal order, whether it was invalid at the time. Should the court agree that it was invalid at the time, then we would argue that under the standards set forth in the recent case of Vega, that there exists a gross miscarriage of justice, and therefore the court could grant the petition and vacate the reinstatement order. Are you talking about the inadequacy of the NTA? Well, unfortunately, we are at a disadvantage, Your Honor, because we don't have the notice to appear. The only document the government deemed fit to produce was the disorder, which is found at the record pages two through three. Most relevant is that page one omits any reference to an address. The second page confirms that there's no address because the immigration judge checked off a box that said that the respondent had failed, that the petitioner, I should say, had failed to provide an address. But as I'm sure the court knows, the petitioner has maintained that he told the government where he was going to be staying at. In fact, the record at page 44, when he's being interviewed for his reasonable fear determination, he specifically tells the officer that when he was arrested upon entry into the country on August 23rd of 2005, he told the officers, he told ICE that he was going to be, quote, going to Los Angeles, LA. To live with his aunt. He's then released on an order of recognizance, and he's served with the notice to appear. Now, my client declares that the notice to appear did not have the date or the time or the location as required. Obviously, at the time that we briefed the issue, the argument that we were making was that if the location of the court was not listed in the charging document, then technically the court would lack jurisdiction. I recognize, as the government correctly points out, in Rule 28J letters filed on November 20th, that in fact, this court's decision in Furman forecloses that argument. But we still have to get back to what the original question is, whether or not at the time the order executed in 2013, when my client was arrested by ICE and physically removed from the country, whether it was valid or not. What remains unchanged is the in absentia statute. INA section 240A, which I provide a citation to, but obviously part of the Furman decision. That specifically says that before a court can proceed to deport somebody in absentia, the government must prove by, quote, clear, unequivocal, and convincing evidence that notice was served to the alien. And moreover, that the alien was given notice of his obligation to notify the immigration court of his address. I would argue that the record is devoid of any of that. If, in fact, your client didn't give a last address where he could be reached, okay, if that is a fact, then, of course, all those requirements go by the wayside, right? I would agree with that. So really what we're talking about is, is there a factual issue that the IJ has to resolve as to whether or not an address was given? Yes, I would agree with that, but I would also add, Your Honor, respectfully, that I think that at the end of the day, the government is going to reinstate orders of removal that were issued when the alien was present in court. And obviously, I'm not sure statistically what the number would be, but there's obviously going to be a certain number of cases where the alien failed to appear and was ordered deported in absentia. I believe that in those cases, what Vega is basically asking for is that the court, at the very least, be satisfied that, factually, there is evidence to show that the alien received notice of the hearing and, moreover, that the alien was advised of his obligation to notify the court of any change of address. And I'm asking for that because it's in the statute. So presumably, the judge should have followed that statute when ordering the in absentia order. The problem we have is that the record doesn't have that. And unless the record produces that evidence, then I don't believe that the government has met their burden to show that the prior order of removal was valid. And I would argue that it's somewhat discussed in passing, but I think it is relevant, Your Honor. This is very much similar to the criminal illegal reentry cases where the courts have made it clear that before you can prosecute someone for illegal reentry, can engage into an analysis as to whether or not the prior order of removal that is being used to justify the criminal action is valid at the time. I recognize that before Vega Garcia. I'm sorry. Please finish your point. The audio is a little garbled, so I don't want to interrupt you. No, no. What I was going to argue, Your Honor, is that I believe that prior to Vega Andiano, there was it was somewhat unclear what the Garcia Rincon gross miscarriage of justice exception would entail. But I believe that now we're at a benefit because we've been provided clear guidance because of the Andiano. So that was the point I was going to make. But please, Your Honor, ask your question. I just wanted to ask you if you can just crystallize. Why is your issue about jurisdiction not eliminated by Aguilar Furman? What I understood for me to argue is that in terms of when you can find, but essentially the argument is that even if a notice to appear lacks the date, time and location, if a subsequent hearing notice was mailed or provided, then in theory, there is no question of personal jurisdiction. Over the alien. In order to proceed with the case. Again, I recognize that in theory, you could still preserve the argument here because, again, there is no evidence of a subsequent hearing notice. And there is no evidence that the date, time and location. Of the petitioners hearing in San Antonio was listed on the notice to appear. It has to be either or. It has to be either in the notice to appear charging document or it has to be listed in a subsequent notice to appear. So I'm not conceding that Furman forecloses my argument because I don't believe that the evidence has been produced. But I do. Nice terms of the issue of lack of jurisdiction that that argument was foreclosed by the court. I just glanced at the record and I think what your client said he told the asylum officer or what he testified to was, quote, they gave me permission to go and enter all the way to L.A. But I lost the paper and they never let me know I had an appointment with immigration court. Close quote. Now, that's not quite the same thing as saying he gave them an address, is it? Well, he does tell them that he's going to L.A. to his aunt. And I would argue respectfully, page eight of the record, which is the I-213 form, which was what was produced by the government when the order of removal was reinstated in 2013. Specifically under the section titled Immigration History, it says that. He was he was served with a notice to appear and released on his own recognizance and served with what is called a form I-220. Before can release anyone on their own recognizance, you would have to produce some type of address. I don't think that it's the government's routine to let people go of custody without having some type of affirmative address. And at the time, petitioner was 23 years old. It wasn't as though he was a minor. I would argue that there is an address that was listed at some point, whether or not it was a Los Angeles address or a different address. We don't know. OK, but let me ask. But again, did you read this? Did you read this argument below? Did your client raise this argument below? There was no mechanism to raise it, Your Honor. With all due respect, this is a petition for review of a reinstatement order. So there's no opportunity to present this argument before the immigration judge. Although Mr. Lozano did have a hearing with the immigration judge, it was strictly limited to deciding whether or not to affirm the asylum officer's decision not to find that he had a reasonable fear to qualify for withholding a removal. The IJ didn't have the power to consider in that proceeding that the notice was inadequate or that it was not sent to him? That couldn't have been raised?  Because of the proceedings, once you have a reinstatement order that's issued, the immigration judge's sole inquiry into this case has to do with the negative, reasonable fear determination made by the asylum officer. But the immigration judge was in Los Angeles and the removal order took place in San Antonio. So technically, jurisdiction to consider any type of challenge would more than likely lie with the San Antonio Immigration Court. But we would argue that that authority also lies in Your Honor's hands because it can be brought as a challenge to a reinstatement order based on Vega and Guillermo. OK, that answers my question. Thank you. I don't have anything. I don't have any more time. So your time's up. And we used your two minutes of rebuttal with questions, but they're very helpful. And I'll give you two minutes of rebuttal extra time. So I appreciate that, Your Honor. So could the court report put the two minutes on now? You're from Mr. Pennington. And Mr. Pennington, if you want more than your allotted 10 minutes, you'll get it as well. Thank you, Judge Gould. And good morning to all. Greg Pennington for the attorney general. Mr. Lasama did have an available avenue to challenge whether he received notice. He could file a motion to reopen, which is his statutory right. And this court recognized in Miller that even though the reinstatement statute bars reopening, when compared to the reopening statute, which grants an alien a right to file a motion to reopen, they're incompatible. And the motion to reopen trumps it. So if Mr. Lasama argues that he did not have notice of his hearing, then he needs to file a motion to reopen and rescind that removal order. That's a statutory right, and that would resolve any factual issues that would need to be presented to the immigration judge. So your position is that we can't address – that's not properly before us, whether he received the proper notice in this petition? No, because it's never been presented to the agency. And if you look at the in absentia order that the immigration judge did enter, it states that he was personally served with a notice to appear. Based on my experience, a notice to appear specifically warns of the obligation to notify the immigration court of an address where a later notice of hearing can be sent. And then the order goes on to state that he never provided that statutorily required notice. If we were to deny the petition currently, would he be able to file a separate motion to reopen, or is that foreclosed because of this current petition? It is not foreclosed. And I think Stone v. INS, the Supreme Court case, says that even though a petition for review of a removal order is ongoing, a motion to reopen or reconsider can be filed with the board, or in this case with the immigration judge. And that would resolve – if he has a claim that he gave an address and he would need to submit evidentiary material to support that, I mean, those are factual findings that need to be made in the first instance with the immigration judge. And then he could then petition for review of the denial of a motion to reopen. And that's what this court was faced with in Miller. It was even though a removal order was reinstated, the alien filed a motion to reopen, and the board held that it didn't have the authority, but this court held that it did, and remanded the court to consider the motion to reopen. So what you're really saying is it's not a question of waiver. It's not that he's waived the argument by not having raised it below. It's that it's not really ripe for our consideration because he has another avenue to raise it before we get to it, and that's likely to be a factual inquiry that the immigration court is better able to make? Yes, Judge Kogan. So the only challenge he's really making is the denial of or the reinstatement of that prior order, and the only limited review this court has of that reinstatement is whether he's an alien and he has a prior order and whether he illegally reentered. And although the court recognized that the court can look for a gross miscarriage of justice in the underlying order, the only argument he really raised in his opening brief is that the immigration court lacked jurisdiction because that notice to appear lacked the date and time. And that's a very narrow argument and one that is squarely foreclosed by the court's decision, both in Kerangithi and Aguiar-Ferman. So those are the two very narrow issues the court's considering in this petition, and that leaves only his reasonable fear claim, which he does not seem to present in his opening argument, but is clearly supported by substantial evidence in this record. The only claim he raised in his opening brief was that he will be targeted based on familial relationships, but he did not argue before the asylum officer or the immigration judge that he would be harmed based on his family. He argued that he would be harmed because he failed to pay the gang a ransom or rent or whatever he called it, and that was his only fear of harm. But it's really a chicken-egg question, isn't it? I mean, he's basically saying that he's going to be targeted because they're afraid that he's going to target them because they've injured his family, right? Isn't that a family unit persecution ground that could give rise to reasonable fear? I would say best-case scenario, it might give rise to a reasonable fear for those family members, but not to him himself. Why is that true, though? Because, I mean, if a gang is willing to go after his family members, why isn't it reasonable to assume that they would go after him as well? The gang has shown that it will go after him, but it's not because his last name is Lasama Rivera. It's because he failed to pay them the money they demanded. When he was deported in 2017, they came to his house. They said, we know you just got deported, and we know that you people that get deported from America bring money with you. So we want that money. And he said, no, I'm not going to pay you. I don't have the money. They came back, and they harmed him and said, if you don't get the money, we're going to harm you further. And I would also add that he didn't provide any testimony to say that his family members were specifically targeted because they were his family either. The details were vague about just a cousin being shot at on her motorcycle, and that it was the MS gang, or that his cousin's car was shot, and it was the MS gang. There's no evidence that he presented to show that any of these incidents are connected. We know that the country is plagued by violence, but he needs to show that there's a reasonable possibility that he's going to establish that he's got that nexus to a protected ground. And he just – this record would not compel that conclusion. A reasonable immigration judge would not be compelled to find in these expedited and efficient hearings that he made that claim. My main concern is that the IJ really didn't address the family connection at all as a discriminatory group, a persecuted group. And the family can be a persecuted group. And the question I guess I have for you is, yes, this started out as an extortion from him or retaliation from him and not the family, but didn't it evolve to a point, or at least shouldn't we require the IJ to find whether it evolved to a point that they started going after him, not because they're any longer interested in extortion, but because they're afraid he's going after them because they went after his family. I think I said that very badly, but I think you probably know what I mean. I do. Mr. Lasama really analogizes his case to that of the court's decision in Ayala. But there the court was faced with a family that owned a group of hotels, and they were specifically extorting the family members that owned the hotels, not just the husband and the wife but other family members. And there was evidence presented in the record that that was the motive. But here the motive, the only motive he presented was that the gang thought that he had money because he was deported. But to say that this record compels a finding based on this court's precedent and Delgado Ortiz and Ramirez Rivera and Molina Morales, all the cases I cited in my brief, that's just a claim that's explicitly rejected. We don't have that extortion plus in this case. You're really arguing a causation, aren't you? I mean, in the other cases, he would be targeted as a result of the family being targeted. Here, the family's being targeted as a result of his actual actions. And that's how you're distinguishing those two cases? Is that a right summary or not? Yeah, I would say that that's even a best reading because he didn't specifically testify either to the asylum officer or the immigration judge that his family members were specifically targeted because of him. So I think that's even a best reading of the case. He just said that these other family members were harmed. He didn't really elaborate or present any evidence or affidavits or anything from these other family members. Why isn't that enough? I mean, if I leave the country and I have 10 family members and nine of them are threatened, why do I not satisfy a reasonable fear of persecution if I return because nine of my family members have been injured? Your point is, no, you might have a fear of persecution, but it's not enough to meet the particular social class under the statute. Right. I could say his fear would be reasonable, but he's got to connect it to a statutorily protected ground. It's not enough to fear strife and gang violence in your country. I mean, it's deplorable and it's awful. But the statute requires a clear link that he's being targeted. A reason he's being targeted is for one of these statutorily protected grounds. And the immigration judge made a reasonable decision that he failed to do that. And the only reason this court could go and reverse that is to say that this record compels it. And I see my time is up. We would ask the court deny the petition for review. Thank you, Mr. Pennington. And because we're giving Mr. LaCosta a couple of extra minutes, we will let you have more time if you want. You don't need another two minutes. Okay, well, therefore, the government has submitted its case. It will ask Mr. LaCosta to give us his rebuttal argument within the two extra minutes. Thank you, Your Honor. Obviously, what I would touch on is that under Rios and Ayala, there clearly is, at the very least, membership in a particular social group. Family has always been recognized. The definition of family doesn't explicitly limit family to, you know, mom, dad, brothers, sisters, too. The original target, unlike Ayala, was not the family. The original target was him. And to the extent he established that the family got involved, it was only secondary to his being involved. And that's really very different than Ayala, where they were first going after the family, and as a result of going after the family, they got to the petitioner. And I would agree to an extent. Mr. Lasama does tell the officer that after he went to go live with his cousin for two months, once he leaves, that they went back and they harmed the cousin that was there. You had the other cousin that was on the motorcycle that was harmed by the gang members. He even tells the officer that at the point that he was being interviewed, they were still looking for him. So I think at some point you're right, Your Honor. It might have been him that was being directly targeted, but I don't think that Rios or Ayala precludes from a group evolving and becoming based on family. It might have originated based on him being singled out alone, but then I don't think anything precludes the group from evolving and becoming now a family unit. With respect to briefly the issue of ripeness, I would argue, Your Honor, there is the possibility of a motion to reopen. But as I explained in my Rule 20AJ letter, that opportunity with the Fifth Circuit was not available in 2017 when he was arrested. Moreover, I think that once the government, who has the option to either let Mr. Lasama go home and file the motion to reopen and hold on and wait on issuing the reinstatement order, once they elected to file the reinstatement order against him, I think the issue is right because the government has made that decision. And I see my time is up. And with that, I submit, unless there's any questions. Thank you. Thank you. Okay. Well, I want to, well, unless we have questions from Judge Nelson or Judge Kogan, I have none and we will therefore submit this Rivera case and the parties will hear from us in due course. I also want to thank you both for your well-presented arguments. Thank you.
judges: Gould, Cogan, Nelson